UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____X
FREEDOM UNITED BEVERAGE INC., d/b/a,
FREEDOM UNITED CLOTHING      ____CV_____

             Plaintiff,           **VERIFIED COMPLAINT**

    vs.                    <u>**JURY TRIAL DEMANDED**</u>

ROBYN RIHANNA FENTY, FENTY CORP.,
and PUMA NORTH AMERICA, INC.

             Defendants.
_____X

### <u>COMPLAINT FOR TRADEMARK INGRINGEMENT AND UNFAIR COMPETITION</u>

Plaintiff, FREEDOM UNITED BEVERAGE INC., d/b/a, FREEDOM UNITED CLOTHING ("Plaintiff" or "Freedom United"), by and through its undersigned attorneys, seeks injunctive and monetary relief from Defendants ROBIN RIHANNA FENTY, FENTY CORPORATION, and PUMA NORTH AMERICA, INC. (collectively, "Defendants") for trademark infringement and unfair



competition with regard to Plaintiff's distinctive and federally registered trademarks [1](hereafter the "FU Marks"). As alleged more fully below, Defendants have violated, and continue to violate, the Lanham Act, 15 U.S.C. §§1051 et seq., and New York common law through their unauthorized use of Plaintiff's trademark. Plaintiff alleges the following claims against Defendants:

---



[1] Plaintiff also uses these distinctive marks in its business.

## JURISDICTION AND VENUE

1.     This court has personal jurisdiction over defendant Fenty Corporation because it (i) is a foreign corporation registered to do business in the state of New York, (ii) upon information and belief, owns, uses or possesses real property in the state of New York and within this judicial district, (iii) upon information and belief, transacts or has transacted business, including promoting, advertising and actually selling its products, in the state of New York and within this judicial district, and the effects of those acts have been felt in this district, (iv) regularly  does  or  solicits  business and otherwise derives substantial revenue from  goods used or consumed or services rendered, in the state of New York and (v) upon information and belief has committed tortious acts in the state and city of New York, and the effects of those acts have been felt in this district.

2.     This court has personal jurisdiction over defendant Puma North America, Inc. because it (i) is a foreign corporation registered to do business in the state of New York, (ii) upon information and belief, owns, uses or possesses real property in the state of New York and within this judicial district, (iii) upon information and belief, transacts or has transacted business, including promoting, advertising and actually selling its products, in the state of New York and within this judicial district, and the effects of those acts have been felt in this district, (iv) regularly  does  or  solicits  business and otherwise derives substantial revenue from  goods used or consumed or services rendered, in the state of New York and (v) upon information and belief has committed tortious acts in the state and city of New York, and the effects of those acts have been felt in this district.

3.     This court has personal jurisdiction over defendant Robyn Rihanna Fenty because she (i) upon information and belief, owns, uses or possesses real property in the state of New York and within this judicial district, (ii) upon information and belief, transacts or has transacted business, including promoting, advertising and actually selling products and/or performing services, in the state of New York and within this judicial district, including directing agents and employees of Fenty Corporation to transact business in this district (including directing the agents and employees of Fenty Corp. to participate in

fashion shows and a "pop-up bus" in New York City) and the effects of those acts have been felt in this district, (iv) regularly does or solicits business and otherwise derives substantial revenue from goods sold, used or consumed or services rendered, in the state of New York and (v) upon information and belief has committed tortious acts in the State and City of New York, and the effects of those acts have been felt in this district.

4.      Upon information and belief, Defendants purposefully directs their business activities toward consumers in the State of New York, including within this judicial district; derive a commercial benefit from their contacts within the State of New York; and have cause and are causing injury to Plaintiff within the State of New York.

5.      This court has subject matter jurisdiction over this matter pursuant to 15 U.S.C.A. § 1121 and 28 U.S.C.A. §§ 1331, 1332, 1338 and 1367. Plaintiffs' claims are, in part, based on violations of the Lanham Act, as amended, 15 U.S.C.A. §§ 1051 et seq. The court has jurisdiction over the state law claims pursuant to 28 U.S.C.A. §§ 1332, 1338(b), and 1367.

6.      Venue properly lies within the Southern District of New York pursuant to 28 U.S.C.A. § 1391(b).

## THE PARTIES

7.      Plaintiff Freedom United is a California Corporation with a corporate office in 16030 Ventura Blvd Suit #240, Encino, California  91436. Gregory Carney ("Carney") is the Chief Executive Officer of Freedom United.

8.      Upon information and belief, defendant Fenty Corporation ("Fenty Corp"), is a corporation organized and existing under the laws of the State of Delaware, and authorized and registered to do business in the State of New York as a foreign entity.

9.      Upon information and belief, defendant Puma North America Inc. ("Puma") is a corporation organized and existing under the laws of the State of Delaware, and authorized and registered

3

to do business in the State of New York as a foreign entity.

10.     Upon information and belief, defendant Robyn Rihanna Fenty ("Rihanna") is an officer, director, owner and/or principal of Fenty Corp. Rihanna does business as "Rihanna."

11.     Plaintiffs are presently ignorant of the capacities of defendants sued as DOE 1 and DOE 2, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will amend this complaint to allege these defendants' true names and capacities when ascertained.

12.     Upon information and belief Jennifer Rosales Davis ("Davis") is a longtime friend of Rihanna.

13.     Upon information and belief Davis is a longtime manager and business partner of Rihanna.

14.     Upon information and belief Davis has been an employee of Rihanna and/or Fenty Corp.

15.     Upon information and belief Davis, at all times material hereto, was agent, employee, partner, joint venturer, aider and abettor, alter ego, and co-conspirator of or with each of Fenty and the Fenty Corp. defendants, and in doing the things alleged, was acting within the course and scope of such agency, employment, partnership, joint venture, and conspiracy, and each of Rihanna and Fenty Corp. ratified and approved the acts of Davis.

16.     Upon information and belief Rihanna, at all times material hereto, was the agent, employee, partner, joint venturer, aider and abettor, alter ego, and/or co-conspirator of or with Puma, and in doing the things alleged, was acting within the course and scope of such agency, employment, partnership, joint venture, and conspiracy.

17.     Puma ratified and approved the acts of Rihanna and Fenty Corp. described herein.

18.     Upon information and belief, at all times mentioned, each defendant was the agent, employee, partner, joint venturer, aider and abetter, alter ego, and coconspirator of or with each of the remaining defendants, and in doing the things alleged, was acting within the course and scope of such agency, employment, partnership, joint venture, and conspiracy, and each defendant ratified and approved the acts of the remaining defendants.

## FACTUAL BACKGROUND

19.     In or about December 2014 Puma and Fenty publicly announced "a new multi-year partnership, kicking off in January 2015." According to the joint press release "Rihanna will become PUMA's global ambassador for Women's Training and serve as the PUMA Women's Creative Director, bringing her styling sensibilities and innovation to PUMA's collections." A copy of the press release ("Rihanna Release") issued by Puma making said announcement is attached hereto as Exhibit A.

20.     In the Rihanna Release Puma and Fenty further announced the following

> Fans can anticipate PUMA and Rihanna taking a fresh, forward thinking and non-traditional approach to sports, fitness and lifestyle – fusing Rihanna's personality, love of sports, spirit and style into the growing footwear and apparel segment. No stranger to breaking the mold with beauty, fashion and lifestyle trends, Rihanna, with PUMA's support, will bring her personal touch and creativity to the athletic world.

> Rihanna will also assume the role of PUMA's Creative Director for the category, directly influencing product collections as early as 2015, and working in partnership with PUMA's Internal Product Creation team. These collections will be designed with the goal of strengthening women in training sessions and beyond, and inspiring confidence in their bodies and themselves – the exact confidence for which Rihanna is so well known and celebrated. As part of her role, Rihanna will work with PUMA to design and customize classic PUMA styles as well as create new styles to add to the PUMA product portfolio.

> Speaking about the new partnership with PUMA, Rihanna said: "It's great to find a brand that celebrates strength and individuality. I couldn't think of a more perfect partner to collaborate with as a creative director. I'm excited for you to see what PUMA and I come up with."

> Rihanna will play a starring role in PUMA's brand campaign, Forever Faster and be featured along with many of PUMA's world-class athletes such as Usain Bolt and Sergio Aguero. PUMA and Rihanna will launch several fan activations throughout the partnership around the world such as consumer and retail events, training and fitness related social media content, and product programs.

See Exhibit A hereto.

**Plaintiffs' Business and Trademarks**

21.     Plaintiff Freedom United is the owner of the FU Marks, which bear USPTO Registration Numbers 4,663,180 and 3,354,124, respectively.

22.     Freedom United is a well-known producer and international distributor of clothing and

fashion accessories, which are distinctive, high-quality articles of clothing. In addition to offering men's and women's clothing, among others, Freedom United has offered hats, beanies, scarves, bags, jewelry, art, music, styling products, skin care products, private label beverages, water, energy drinks, and has been developing sandals and flip flops utilizing recycled rubber by-products provided by an established rubber company.

23. Freedom United has continuously and substantially used its FU Marks in interstate commerce since 2006, with considerable success and adoption among many cultural influencers and celebrities. The FU Mark and brand has achieved and enjoyed substantial acclaim and recognition in the fashion and entertainment worlds and among many cultural icons and trendsetters, having been worn and/or promoted by such celebrities and athletes as: Demi Lovato, Brody Jenner, model Shaun Ross, Davey Hamilton, Josh Henderson, Heisman Trophy Winner Matt Leinert, Haylie and Hilary Duff, Evan Ross, Joel Madden, Jesse McCartney, Katie Cassidy, Rex Lee, Chris Tamburello aka CT, Mike the "Miz" Mizanin and wife Maryse Ouellet, Brittany Snow and many others. Events sponsored and promoted by Freedom United have been attended by many well-known actors, musicians, athletes, models and celebrities, including Kim and Khloe Kardashian, Anthony Hopkins, Bruce Willis, Tracee Ellis Ross, Paris Hilton, Joey Fatone, Fat Joe, Chris Brown, Ashlee Simpson, Joe Simpson, Tara Reid, Steve Nash (NBA), Tony Gonzalez (NFL), Chris Evans, Sophie Monk, Nick Lachey, Meagan Good, Ne-Yo, Rooney the Band, and others.

24. In or about 2013 Demi Lovato, a pop, rock, and R&B artist and actress who has received a number of accolades and awards, including an MTV Video Music Award, 13 Teen Choice Awards, five People's Choice Awards, an ALMA Award, and a Latin American Music Award, posted on her Instagram account (which currently has 70 million followers) the following image of herself wearing an FU hoodie:



25.     Plaintiff's products are sold online and in other retail establishments located throughout the United States. Such points of distribution include (or have included), but are not limited to, Broadbent store and online boutiques, M. Fredric, Rock Step Shopping Center, pop-up shops in Los Angeles, Miami, New York, New Orleans, Hot Springs, and festivals in Las Vegas,  among others.

26.     Plaintiff also maintains Internet sites on the World Wide Web for the promotion and sale of   FU   branded   products,   including   those   at   the   following   address: https://www.freedomunitedclothing.com, and other social media platforms including Facebook and Instagram. Attached hereto as Exhibit B are screenshots of web pages at  Plaintiff's website.

27.     Plaintiff's promotional and advertising materials for the FU products (defined below), including Plaintiff's Web site, prominently display the taglines FU.

28.     The above registrations provide constructive notice of the registrant's claim of exclusive ownership of these marks. They also constitute prima facie evidence of the validity of these marks, the registrations, and the registrant's exclusive right to use and license such marks in commerce in connection with the goods specified in said registrations, as provided by Sections 7 and 22 of the Lanham Act, 15 U.S.C.A. §§ 1057 and 1072.

29.     Through its extensive use, Plaintiff also owns common-law trademark rights in the trademark "FU." Collectively, the federally registered and common-law trademarks described  above shall be referred to as "FU Marks."

30.     Plaintiff has devoted substantial time, effort and resources – including in excess of $2 million of capital - to the development, manufacture, promotion and marketing throughout the United States of the FU Marks and products. As a result of such capital investment and promotional and marketing efforts, the purchasing public has come to know, rely upon, and recognize the business and goods of Plaintiffs by such trademarks.

31.      By virtue of Plaintiff's marketing efforts and expenditures, and as a result of the excellence of its products, Plaintiff's FU Marks have achieved a valuable reputation and a high degree of goodwill.

32.     Plaintiff has devoted substantial time, effort and resources to the development and promotion throughout the United States of sweatshirts/hoodies, hats, beanies, scarves, bags, jewelry, art, music, styling products, skin care products, private label beverages, water, energy drinks, sandals and flip flops bearing the FU Marks ("FU Products").

33.     The sale of FU Products has grossed approximately $1 million.

34.     The FU Products have been worn and promoted by employees and/or principals of Fenty Corp. and their family members, including Rihanna.

35.     Set forth below is a photograph of Davis from 2009 wearing FU Products while she attempts to shield Rihanna from photographers.



*See* http://www.x17online.com/2009/03/chris_brown_parties_with_rihanna_follows_her

**Defendants' Business and Infringement**

36.     Plaintiff has recently learned that Defendants are using the confusingly similar trademark "F.U." for directly competitive clothing products, which infringes the FU Marks. Moreover, Defendants' physical products are confusingly similar in appearance to Plaintiff's, and were only marketed and sold after Defendants had actual  knowledge of Plaintiff's products, and in particular the FU Marks.

37.     Upon information and belief Defendants are selling infringing products through ecommerce platforms and authorized third party vendors, including,   Bergdorf Goodman, Endclothing.com,   Nordstromsrack.com,   Footlocker.com,   Hibbett.com,   Lyst.com,   Dollskill.com,

ebay.com,      Walmart.com,      Poshmark.com,      Amazon.com,      Google.com,      JimmyJazz.com,

SneakerStudio.com.

38.    Set forth below is Plaintiff's federally registered mark juxtaposed to defendants'

confusingly similar and infringing mark:



| Plaintiff's Mark | Defendant's Infringing Mark |
|---|---|









● ○○○○ AT&T 🛜          1:18 AM          ∗ 🔋
hausofrihanna.com

more colours to come later. At this time there is no
pricing info. **Update:** it costs $259.



**Lynn Ban** designed the jewellery for the new Fenty x
Puma collection. Rih rocked a couple of those including
the FU choker and smoking blunt necklace. Get these
later in the year from Ban's website, Dover Street Market
or Maxfield LA.

39.     Set forth below are additional examples of infringing products marketed and sold by Defendants.



**Trademark Infringement**

40.     Defendants have adopted and used the trademark F.U., despite Plaintiff's established common-law rights and federal registrations in the FU Marks for its confusingly similar products without permission or authority from Plaintiff. The F.U. trade name and trademark wholly incorporate the primary element of Plaintiff's FU Marks.

41.     Upon information and belief, Defendants adopted the confusingly similar trademark and trade name with full knowledge of Plaintiff's goods and trademarks, and with the intention that consumers would be confused into believing that Defendants' products were associated, or affiliated in some way, with Plaintiff's.

42.     Employees and/or agents, and their family members, of some of Defendants were provided with FU Products by Freedom United's owner and principal Greg Carney in 2009, with the hopes that

12

Rihanna would promote said products on her tour.

43.    Upon information and belief Defendants have been marketing and promoting their confusingly similar products on the World Wide Web including at the following Internet address *us.puma.com,* even after Plaintiff sent a cease and desist letter to Defendants on or about January 25, 2018. An Infringing FU Product, to wit, a "FU" branded t-shirt, was purchased on defendant Puma's website on or about May 2, 2018, the receipt for which is attached hereto as Exhibit C hereto.

44.    Set forth is a picture of an authentic FU branded tank top next to the Infringing FU item purchased and referenced in paragraph 40 (and Exhibit C) above:



45.     In or about January 2017 Carney and Davis exchanged Insta Messages regarding a Freedom United event that Carney was promoting at the Los Angeles Art District, as shown below:



46.     In January 2015, Aaron Davis, husband of Jennifer Davis, posted an image on Instagram acknowledging his receipt of a large package of Freedom United clothing from Carney, concluding with a "shout out" and the hashtags @gregcarneyfu and #FU, as shown below:



47.     At all times material hereto Aaron Davis was followed by Rihanna on Instagram.

48.     Set forth below are numerous exchanges between Carney and Aaron Davis from 2015-2017 evidencing Davis' receipt of multiple shipments of FU branded goods, his promotion of the FU brand at events he attended (stating he "Rock Em so much"), and his promises to "do the best I can cause you fam," and "Ima plug you in man the best way I know how," and that "You been on your hustle since day 1. If there is anything I can do lemme know man. You always been good to me and I don't forget things like that."







50.    At all times material hereto Jessica Rosales ("Jennifer Rosales") was Rihanna's stylist.

51.    Jennifer Rosales is married to Davis' brother Gonsalo Rosales ("Gonsalo Rosales").

52.     At all times material hereto, Jessica Rosales and Gonsalo Rosales – were consumers and promoters of the FU Mark and brand and FU Products.

53.    On January 14, 2015 Gonsalo Rosales sent a text message to Carney, wherein he attached an image of Freedom United's trademark registration, praised the FU brand, and proposed sponsorship of the FU brand by Rihanna's band and dancers for Rihanna's 2015 summer tour, as shown below:



54.     In his January 14, 2015 message to Carney Gonsalo Rosales told Carney "**don't know what your plans are and progress is with the clothing line but my wife @octbluebyjessicar is one of Rihanna's stylist and is bout to hop on a world tour this Summer. Let's see if FU can sponsor dancers, band etc on this tour…"**

55.     On February 15, 2015, Jessica Rosales posted a picture on Instagram of herself with her husband Gonsalo wearing a Freedom United t-shirt, as shown below.



56.     Upon information and belief, Rihanna's former boyfriend Chris Brown, a Grammy award winning musician with 47 million followers on Instagram, attended Freedom United's launch party at Les Deux Nightclub in 2007 (during which time Brown and Rihanna were dating), in Hollywood, California, as shown below:



57.    Upon information and belief the below image depicts Rihanna wearing an "FU" branded hoodie in our about February 2014, long before she launched her confusingly similar "F.U." branded goods in partnership with Puma:



58.     In or about July 2016, after receiving a shipment of FU Products from Carney and giving articles to Rihanna and his wife, Aaron Davis, referring to Rihanna and his wife, told Carney that "the FU hoodie is the girls' favorite hoodie."

59.     Upon information and belief Defendants first launched the line of clothing and accessories that featured the "F.U." logo and otherwise infringed the FU Marks and branded goods in 2017 during "fashion week" shows in Paris and New York City.

60.     Upon information and belief Rihanna attended fashion shows and "pop-up buses" promoting the Fenty and Puma brands and products during 2016, 2017 and 2018.

61.     Prior to the Defendants' promotion, marketing, distribution and offering for sale of the FU Infringing Products Rihanna and Fenty had actual knowledge of the FU Marks and FU  Products Plaintiff promoted and sold with the FU Marks affixed thereto.

62.     Prior to the Defendants' promotion, marketing, distribution and sale of the FU Infringing Products Rihanna and Fenty had constructive knowledge of the FU Marks and and FU  Products Plaintiff promoted and sold with the FU Marks affixed thereto.

63.     Prior to the Defendants' promotion, marketing, distribution and sale of the FU Infringing Products Rihanna had received and worn various clothing items and products Plaintiff promoted and sold with and under the FU Marks, including hoodies, t-shirts and tank tops.

64.     Prior to the Defendants' promotion, marketing, distribution and sale of the FU Infringing Products Rihanna and Fenty had actual knowledge that Plaintiff had obtained registered trademarks of the FU Marks from the United States Patent & Trademark Office.

65.     Prior to the Defendants' promotion, marketing, distribution and sale of the FU Infringing Products Rihanna and Fenty had constructive knowledge that Plaintiff had obtained registered trademarks of the FU Marks from the United States Patent & Trademark office.

66.      Prior to the Defendants' promotion, marketing, distribution and sale of the FU Infringing

Products Puma had actual knowledge that Plaintiff had obtained registered trademarks of the FU Marks from the United States Patent & Trademark office.

67.     Prior to the Defendants' promotion, marketing, distribution and sale of the FU Infringing Products Puma had constructive knowledge that Plaintiff had obtained registered trademarks of the FU Marks from the United States Patent & Trademark office.

68.     Prior to the Defendants' promotion, marketing, distribution and sale of the "FU Fenty University" line Puma had constructive knowledge that Plaintiff had obtained registered trademarks of the FU Marks from the United States Patent & Trademark office.

69.     Upon information and belief prior to the Defendants' promotion, marketing, distribution and sale of the FU Infringing Products Defendants conducted a trademark search of the letters and logo "FU" and learned that Plaintiff had obtained registered of the FU Marks from the United States Patent & Trademark office.

70.     Upon information and belief prior to the Defendants' promotion, marketing, distribution and sale of the "FU Fenty University" line Defendants conducted a trademark search of the letters and logo "FU" and learned that Plaintiff had obtained registered of the FU Marks from the United States Patent & Trademark office.

71.     The Infringing FU Marks were disseminated and promoted by Rihanna and PUMA on various social media platforms, including Instagram, Twitter, FACEBOOK, at various fashion shows, at www.neimanmarcus.com and bloomindales.com, and on their respectively owned websites.

72.     At no time did Defendants ever apply for a United States trademark covering the F.U. Fenty University line of clothing and products.

73.     In describing the launch of the F.U. Fenty University line of products PUMA has acknowledged the substantial value attached to the logo and brand "FU," stating on its website the "...F.U. logo will earn you major style points," as shown below, which was copied from Puma's website:

## PRODUCT STORY

Most likely to break the rules, Rihanna returns as PUMA Creative Director for her third season. The latest FENTY PUMA by Rihanna collection takes classic school uniforms and dismantles them. Varsity jackets are reimagined with exaggerated dimensions. Sneakers meet stiletto heels. Preppy meets provocative. Unexpected cutlines, premium materials, and chenille patches abound.

Ready to be schooled? Because this sweater will send you straight to advanced fashion class to serve some serious attitude. The distinctive combination of its cropped shape, the extra long sleeves, and the oversized hood with a playful F.U. logo will earn you major style points. FENTY branding on the chest and top adds a luxe detail.

## DETAILS
- Cropped design with FENTY branding on the chest
- Oversized hood with F.U. FENTY University logo
- Extra long sleeves (88 cm from centre back seam to knuckle on a size S)
- Brushed fleece sweatshirt material
- 78% cotton, 17% polyester, 5% elastane

74.     Puma admitted in its web publication that Rihanna was "most likely to break the rules."

75.     In or about October 2017 Carney received a text message from Mr. Ryan Orrel, a longtime Freedom United customer, who saw the infringing products sold by Defendants and inquired whether Freedom United had licensed the FU Mark to Defendants.

76.     In or about October 2017 Carney received a text message from Ms. Krista Young, a longtime Freedom United customer, who was wearing a legitimate FU branded item and was approached by customers or fans of Rihanna indicating that they confused the FU Mark and clothing with Defendants' FU Infringing Products.

77.     Prior to the launch of the Puma/Rihanna partnership in Rihanna and Fenty Corp. had constructive knowledge of the FU Marks and FU branded products.

78.     Prior to the launch of the Puma/Rihanna partnership in Rihanna and Fenty Corp. had actual knowledge of the FU Marks and FU branded products.

79.     Plaintiff has no control over the nature and quality of Defendants' products. Any failure, neglect, default or other negative association arising due to Defendants' promotion and sales of Defendants' associated and confusingly similar products will reflect negatively on Plaintiff's reputation and goodwill. Further, because of the notoriety of the FU Mark and brand, it will be natural for Defendants' customers and potential customers to mistakenly assume that Defendant's products are sold

with Plaintiffs' authorization, sponsorship, or consent, which has already begun.

80.    Because Plaintiff's and Defendants' goods are competitive, consumers will mistakenly assume that such goods and their sources are associated or affiliated. Such a result significantly undermines Plaintiff's substantial efforts to establish its identity in the highly competitive fashion industry.

81.    By virtue of the acts complained of, Defendants have created a likelihood of injury to Plaintiff's business reputation, caused a strong likelihood of consumer confusion as to the source of origin or relationship of Plaintiff's and Defendants' goods, and have otherwise competed unfairly with Plaintiff.

82.    Plaintiff is informed and believes, and on that basis alleges, that Defendants' acts are willful and deliberate, and that Defendants have made millions of dollars from products infringing Plaintiff's FU Mark (the "FU Infringing Products") .

83.    Defendants' acts have caused damage to Plaintiff in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from their wrongful actions.

84.    Defendants' acts have caused Plaintiff to suffer irreparable injury to its business. Plaintiff will suffer substantial loss of goodwill and reputation unless and until Defendants are preliminarily and permanently enjoined from the wrongful actions complained of in this Complaint.

**FIRST CAUSE OF ACTION**
**(Trademark Infringement)**
**(15 U.S.C.A. § 1114)**

85.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1-84 above with the same force and effect as if said allegations were fully set forth herein.

86.    Defendants' actions as described above and Defendants' use of the F.U. trademark to promote their products to the same audience as that of Plaintiffs constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C.A. § 1114, which prohibits any person from using in commerce, without the consent of the registrant:

    any reproduction, counterfeit, copy, or colorable imitation of a registered mark in

connection with the sale, offering for sale, distribution, or advertising of any goods
or services on or in connection with which such use is likely to cause confusion, or
to cause mistake, or to deceive . . .

87.     Defendants' adoption and use of a mark in interstate commerce so similar to Plaintiff's FU

Marks have caused, and continue to cause, irreparable injury to the value and goodwill of the FU Marks,

as well as to Plaintiff's business, goodwill, and reputation. Defendants' actions, if not enjoined, will

continue, including the sale of their goods through the same channels of trade used by Plaintiff and to the

same customers targeted by Plaintiff. Plaintiff has no adequate remedy at law in that the amount of its

damages is difficult to ascertain with certainty.

88.     As a result of Defendants' infringement, Plaintiff has incurred damages in an amount to be

proven at trial consisting of, among other things, diversion of sales, and diminution in the value of its

goodwill associated with the FU Marks.

89.     Defendants' actions as described above are deliberate, willful, fraudulent and without any

extenuating circumstances, and constitute a knowing violation of Plaintiff's rights. Plaintiff is therefore

entitled to recover three times the amount of its actual damages, and attorney's fees and costs incurred in

this action, as this is an "exceptional" case under Section 35 of the Lanham Act, 15 U.S.C.A. § 1117.

## SECOND CAUSE OF ACTION
### (False Designation and Description; Unfair Competition)
### (15 U.S.C.A. § 1125)

90.     Plaintiffs reallege and incorporate by reference each and every allegation contained in

paragraphs 1-89 above with the same force and effect as if said allegations were fully set forth herein.

91.     Consumers have come to identify the popular and distinctive FU Marks with Plaintiff

exclusively as the single source of the FU Products energy drinks bearing such trademarks.

92.     Defendants' interstate use of the designation F.U. that wrongfully and falsely designates

Defendants' goods as originating from, or being connected with, Plaintiff, and constitutes the use of false

descriptions or representations in interstate commerce. Defendants' use is likely to deceive consumers

into believing that Defendants' goods are those of, or associated with, Plaintiff, and as a consequence,

Defendants' use is likely to divert, and has diverted, consumers away from Plaintiff's goods.

93.     Defendants' actions as described above and their use of the F.U. name and mark and confusingly similar trade dress to promote their goods to the same audience as that for Plaintiffs' goods constitutes a false designation of origin and unfair competition in violation of Section 43 of the of the Lanham Act, 15 U.S.C. § 1135(a)(1).

94.     Defendants' actions as described above are deliberate, willful, fraudulent and without any extenuating circumstances, and constitute a knowing violation of Plaintiffs' rights. Plaintiffs are entitled to recover their actual damages, and attorney's fees and costs incurred in this action, as this is an "exceptional" case under Section 35 of the Lanham Act, 15 U.S.C.A. § 1117.

95.     As a result of Defendants' aforesaid conduct, Plaintiff has suffered commercial damage, as well as the continuing loss of the goodwill and reputation establish by Plaintiff in its marks. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparably harm and injury for which Plaintiff has not adequate remedy at law. Plaintiff will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

### THIRD CAUSE OF ACTION
### (Common-Law Passing Off and Unfair Competition)

96.     Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1-95 above with the same force and effect as if said allegations were fully set forth herein.

97.     Defendants' unauthorized use of the FU trade name and trademark constitutes passing off and unfair competition of the FU Marks in violation of the common law of New York.

98.     Defendants' wrongful acts have caused and will continue to cause Plaintiff irreparable harm. Plaintiffs have no adequate remedy at law.

99.     Plaintiffs are entitled to a judgment enjoining and restraining Defendants from engaging in further acts of infringement and unfair competition.

### FOURTH CAUSE OF ACTION
### (Unfair Competition)

**(NY Gen Bus L §349)**

100.   Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1-99 above with the same force and effect as if said allegations were fully set forth herein.

101. Defendants' acts described above constitute unfair competition in violation of New York State General Business Law §349, as they are likely to deceive the public.

102. Defendants' acts of unfair competition have caused and will continue to cause Plaintiffs irreparable harm. Plaintiffs have no adequate remedy at law for Defendants' unfair competition.

103. Plaintiffs are entitled to a judgment enjoining and restraining Defendants from engaging in further unfair competition.

**FIFTH CAUSE OF ACTION**
**(Injury to Business Reputation and Dilution)**
**(NY Gen Bus L §360-L)**

104.   Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1-105 above with the same force and effect as if said allegations were fully set forth herein.

105.   Defendants' unauthorized use of the F.U. trade name and trademark is likely to injure Plaintiffs' business reputation, and has diluted, and/or is likely to dilute, the distinctive quality of the FU Marks in violation of General Business Law §360-L.

106.   Defendants willfully intended to trade on Plaintiffs' image and reputation and to dilute the FU Marks, acted with reason to know, or were willfully blind as to the consequences of their actions.

107.   Defendants' wrongful acts have caused and will continue to cause Plaintiffs irreparable harm. Plaintiffs have no adequate remedy at law for Defendants' dilution.

108.   Plaintiffs are therefore entitled to a judgment enjoining and restraining Defendants from engaging in further acts of dilution pursuant to State General Business Law §360-L.

**SIXTH CAUSE OF ACTION**
**(Unjust Enrichment)**

109.   Plaintiffs reallege and incorporate by reference each and every allegation contained in

paragraphs 1-108 above with the same force and effect as if said allegations were fully set forth herein.

110.    As a result of the conduct of Defendants, they have been unjustly enriched at the expense of Plaintiff and the law thus implies a contract by which Defendants must pay to Plaintiff the amount by which, in equity and good conscience, Plaintiff has been damaged, in an amount yet to be determined.

**PRAYER**

Wherefore, Plaintiff requests that the Court enter judgment:

(a) In favor of Plaintiff and against Defendants on all of Plaintiff's claims;

(b) Preliminarily and permanently enjoining and restraining Defendants, their officers, agents, subsidiaries, servants, partners, employees, attorneys, assigns and affiliates, and all others in active concert or participation with it: (i) from manufacturing, distributing, offering for sale, selling, advertising and/or promoting in the United States any fragrance, cosmetics, or personal care products under the trade name "FU" or any other mark that is confusingly similar to Plaintiff's FU Marks; (ii) from using any other mark calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' business and products are in any way associated or affiliated with or related to Plaintiff's FU Marks or its products; (iii) further infringing Plaintiff's FU Marks and damaging Plaintiff's goodwill; (iv) otherwise unfairly competing with Plaintiff in any manner; (v) using any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiff's FU Marks in connection with the publicity, promotion, sale or advertising of products manufactured, received, acquired, imported, shipped, purchased, sold, offered for sale or distributed by Defendants bearing a copy or colorable imitation of any of Plaintiff's FU Marks; (vi) destroying any records documenting the promotion, marketing, manufacture, distribution, sale or receipt of the Infringing FU Products; and (vii) assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (vi), above;

(c) Requiring Defendants to deliver up for destruction, or show proof of destruction, any and all products, labels, signs, prints, packaging, wrappers, receptacles and advertising or promotional materials, including any screens, films, software, files, and any other items tangible or intangible used to produce such materials in their possession or within their custody or control for the Infringing FU Products and/or that bear Plaintiff's FU Marks, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, or any false designation of origin or false representation, or designation similar to Plaintiff's FU Marks or that incorporates the Plaintiff's FU Marks;

(d) Requiring Defendants, in accordance with Section 34(a) of the United States Trademark Act, 15 U.S.C. § 1116(a), to file with the Court, and serve upon Plaintiff, within thirty (30) days after the entry and service on Defendants of each injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the terms of any injunction entered by this Court;

(e) Plaintiff recover all damages sustained as a result of Defendants' activities and that said damages be trebled;

(f) Requiring Defendants to account for and pay over to Plaintiff all Defendants' past profits, together with all profits resulting from sales by Defendants of the Infringing FU Products and any products relating to the aforesaid infringement and unfair competition, and all past damages sustained by Plaintiff;

(g) Increasing the amount of damages and/or profits awarded Plaintiff appropriately pursuant to 15 U.S.C. § 1117(a);

(h) Awarding Plaintiff reasonable attorney's fees, costs, and expenses pursuant to 35 U.S.C. §285, 15 U.S.C. § 1117(a) and/or any other applicable law;

(i) Awarding Plaintiff punitive damages and its costs of this action, together with pre and post-judgment interest as provided by law;

(j) Awarding plaintiff pre- and post-judgment interest as provided by law; and

(k) Awarding Plaintiff such other relief as the Court may deem just and proper.


Dated: New York, New York
      October 17, 2018                RUTA SOULIOS & STRATIS LLP


                By: /s/ Steven A. Soulios
                Steven A. Soulios (SAS-4832)
                A Member of the Firm
                211 East 43rd Street,  24th Floor
                New York, New York 10017
                (212) 997-4500
                *Attorneys for Plaintiff*